TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellant,

v.

Ruby Diane WATT, Individually a/n/f to Jessica Denise Jackson, and as the Administratrix of the Estate of William Corey Watt, Appellee.

No. 10–97–008–CV.

Court of Appeals of Texas, Waco.

Aug. 1, 1997.

---

Dan Morales, Attorney General, Jorge Vega, Deputy Attorney General, Drew T. Durham, Deputy Attorney General for Criminal Justice, Ann Kraatz, Asst. Attorney General, Chief, Law Enforcement Defense Division, and Karen Denise Matlock, Bruce R. Garcia, Asst. Attorneys General, Austin, for appellant.

John L. Pierce, Navasota, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Ruby Diane Watt filed suit under the Texas Tort Claims Act against the Texas Department of Criminal Justice (TDCJ) alleging that prison officers at the Ferguson Unit in Madison County negligently caused the death of her son who was incarcerated in the unit at the time of his death. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–101.109 (Vernon 1997). Watt did not sue the officers individually.

TDCJ filed a motion for summary judgment on the basis of sovereign immunity. TDCJ asserted, among other things, that because the officers' qualified immunity inured to TDCJ's benefit, it is immune from liability. The trial court denied the motion.

## JURISDICTION

Ordinarily, the denial of a motion for summary judgment cannot be appealed. *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex. 1980). However, section 51.014(5) of the Civil Practice and Remedies Code provides for an interlocutory appeal of the denial of a summary judgment "that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon 1997). Because TDCJ's motion for summary judgment was "based on" official immunity of the prison officers, we have jurisdiction. *City of Beverly Hills v. Guevara,* 911 S.W.2d 901, 902 (Tex.App.—Waco 1995, no writ); *Boozier v. Hambrick,* 846 S.W.2d 593, 596 (Tex.App.—Houston [1st Dist.] 1993, no writ).

## MOTION FOR LEAVE TO FILE OUT–OF–TIME BRIEF IN AN INTERLOCUTORY APPEAL

Prior to discussing the merits of the appeal, we must first dispose of TDCJ's "Motion for Leave to File Brief Out of Time," which is currently pending before the court. TDCJ filed a timely motion for extension of time to file its brief on January 27, 1997, requesting a 14–day extension. We denied the motion, citing this court's opinion in *City of Beverly Hills v. Guevara,* 886 S.W.2d 833, 835 (Tex.App.—Waco 1994), *overruled on other grounds,* 904 S.W.2d 655 (Tex.1995), as authority. TDCJ then filed a motion asking us to grant permission to file its brief late. We did not rule on the motion. TDCJ subsequently tendered a brief.

Rule 42 of the Rules of Appellate Procedure controls the timetable for accelerated appeals. TEX.R.APP. P. 42. We have held that Rule 42 does not give us the authority to grant extensions of time to file either the record or the brief. *Guevara,* 886 S.W.2d at 835; *see* TEX.R.APP. P. 42(a)(3). However, in *Guevara,* we did explain that the wording of Rule 42 allows the appellate court, in its discretion, to consider late-filed material if its tardiness is "reasonably explained." 886 S.W.2d at 835. After reviewing TDCJ's motion, we will exercise our discretion and consider TDCJ's late-filed brief. TEX.R.APP. P. 42(a)(3); *see id.*

## FACTUAL BACKGROUND

William Corey Watt was an inmate in TDCJ's Institutional Division, Ferguson Unit, serving time for sexual assault. On September 18, 1989, William Corey Watt allegedly spit on an officer. Due to this unacceptable behavior, it was ordered that he be placed in a "management cell." William Corey Watt refused to voluntarily comply with the cell move, and after the supervising officer received medical clearance, a "forced cell move" was ordered. A five-member team was assembled, and after William Corey Watt repeatedly refused to comply with the supervising officer's directives to exit his cell, the team entered the cell in order to restrain and move him to the "management cell." When the team entered, William Corey Watt violently resisted their attempts to restrain him, striking out at and struggling with the officers. All members of the team were needed to restrain William Corey Watt because he was "exceptionally strong." Even after the officers applied handcuffs and leg restraints and began carrying him to the infirmary for a mandatory medical examination prior to being placed in a management cell, William Corey Watt still continued to fiercely struggle, requiring the officers to place him on the ground in order to get a more secure hold on him. Upon reaching the infirmary, the officers placed William Corey Watt on a gurney where he continued to struggle against all restraints which ultimately resulted in a broken neck and death.

William Corey Watt's mother sued TDCJ, alleging her son died as a result of the negligent actions of prison officers and the negligent implementation of personal property at TDCJ's Ferguson Unit. TDCJ moved for summary judgment on the basis of the affirmative defense of sovereign immunity. The trial court denied the motion, and TDCJ appealed.

## SUMMARY JUDGMENT STANDARD OF REVIEW

In reviewing a summary judgment, we must determine whether TDCJ met its burden by establishing as a matter of law that no genuine issue of material fact exists. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts.,*
*Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995); *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 413 (Tex.1989). In . deciding whether a genuine issue of material fact exists, we must accept all evidence favorable to Watt, the nonmovant, as true, indulging every reasonable inference and resolving all doubts in her favor. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). We will consider evidence which favors TDCJ only if it is uncontroverted. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

As the defendant, TDCJ had the burden of proving its entitlement to summary judgment as a matter of law by either: (1) conclusively negating one of the essential elements of each of Watt's claims; or (2) pleading and conclusively establishing each essential element of an affirmative defense. *Randall's Food Mkts.,* 891 S.W.2d at 644; *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex. 1991); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975); *Morris v. Dallas Morning News, Inc.,* 934 S.W.2d 410, 412 (Tex.App.—Waco 1996, writ denied). Because TDCJ's motion for summary judgment raised the affirmative defense of sovereign immunity, we must determine whether it established that defense as a matter of law. If it did, then the trial court erred in denying TDCJ's motion for summary judgment and we will reverse and render judgment in favor of TDCJ.

## WAIVER OF SOVEREIGN IMMUNITY

■ Generally, governmental units enjoy immunity from tort liability unless that immunity has been waived by the provisions of the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–101.009. Section 101.021 expressly waives sovereign immunity in certain instances. A governmental unit is liable for "personal injury and death so caused by a condition or use of tangible property or real property if the governmental unit would, were it a private person, be liable to the claimant according to

Texas law." *Id.* § 101.021(2). Watt's cause of action is brought under section 101.021(2).

■ A governmental entity does not have respondeat-superior liability under section 101.021(2) for the negligence of its employee if the employee possesses official immunity. *DeWitt v. Harris County,* 904 S.W.2d 650, 654 (Tex.1995); *see City of Beverly Hills v. Guevara,* 904 S.W.2d 655, 656 (Tex.1995). Consequently, despite the fact that sovereign immunity and official immunity are distinguishable, TDCJ cannot be liable under section 101.021(2) for the negligence of its employees if the employees are cloaked with official immunity. *DeWitt,* 904 S.W.2d at 653–54; *Guevara,* 911 S.W.2d at 903.

## OFFICIAL IMMUNITY

■ Official immunity in Texas is an affirmative defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994); *Guevara,* 911 S.W.2d at 903. A governmental employee has official immunity for the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *Id.* Watt has conceded that the prison officers were acting within their scope of authority as employees of TDCJ. However, Watt and TDCJ disagree as to whether the prison officers were performing a discretionary duty and were acting in good faith. Therefore, our role as a reviewing court is to determine whether TDCJ's summary judgment evidence establishes as a matter of law that the officers were performing a discretionary duty and were acting in good faith.

## Discretionary Duty

■ As a general rule, official immunity attaches to a governmental employee's official actions only when the employee's job requires the exercise of personal judgment or discretion. *Kassen v. Hatley,* 887 S.W.2d 4, 9 (Tex.1994); *Chambers,* 883 S.W.2d at 653–54. However, a governmental employee's performance of duties that are merely ministerial in nature is not protected by official immunity. *Id.* The distinction between

these two categories is necessarily one of degree, because any official act that is ministerial still requires the actor to use some discretion in its performance. However, the supreme court has attempted to differentiate between the two by stating that:

> If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial.

*Chambers,* 883 S.W.2d at 654.

■ A ministerial act has been found "where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Cortez v. Weatherford Indep. Sch. Dist.,* 925 S.W.2d 144, 148 (Tex.App.—Fort Worth 1996, no writ) (citing *Miller v. State,* 53 S.W.2d 838, 840 (Tex.Civ. App.—Amarillo 1932, writ ref'd)). As a consequence, a dominant factor in determining whether an act should be classified as a "ministerial act" or a "discretionary duty" involves searching for a law, regulation, or policy that controls the act of the governmental employee and allows no leeway for individual deliberation. *See id.; Harris County v. DeWitt,* 880 S.W.2d 99, 101 (Tex.App.—Houston [14th Dist.] 1994), *aff'd,* 904 S.W.2d 650 (Tex.1995).

■ TDCJ's summary judgment proof included excerpts from the deposition of Wes Salvage [1], one of the officers on the "forced cell move team," and the affidavit of Phillip Townsend, a Program Specialist for the Internal Affairs Division of TDCJ and former Use of Force Instructor who helped develop TDCJ's Use of Force Plan. According to Officer Salvage, when a forced cell move is ordered, the officers must determine if the inmate appears dangerous or is exhibiting violent tendencies. If the inmate does appear to be a threat to the officers' safety, then the officers "secure him" and remove him from the cell. Townsend, as an expert on TDCJ's Use of Force Plan, stated that the plan "authorizes TDCJ personnel to use rea-

---

1. The record shows two spellings for this officer's name: "Salvage" and "Savage." We will use the spelling as it appears on his deposition.

sonable force to enforce TDCJ rules and regulations, and to contain or control an offender."

Based on this summary judgment evidence, we hold that the prison officers were indeed performing a discretionary duty, not a ministerial act, in using force to remove William Corey Watt from his cell and transport him to the infirmary for a mandatory examination. Officer Salvage explained that, in the event an inmate resists a cell move, the officers are to "secure him." No specifications as to how such result is to be effected are given to each individual officer. Townsend also explained that, whereas TDCJ does have a policy mandating the procedure for maintaining order at a TDCJ unit, such policy clearly allows each TDCJ employee to exercise his own judgment and take what action he would consider "reasonable" in any given circumstance. Despite the existence of a policy regarding the use of force against inmates, we hold that, because such policy allowed for the exercise of individual judgment and deliberation in conforming to the policy guidelines the officers were performing a discretionary duty in using force to move William Corey Watt to a management cell. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 103 (Tex.1992) (Cornyn, J., concurring) (police officers were performing discretionary duty by pursuing a suspect in light of a policy governing police chases which authorizes officers to exercise individual judgment in deciding to continue the chase); *City of San Antonio v. Duncan,* 936 S.W.2d 63, 65 (Tex.App.—San Antonio 1996, writ requested) (decision of when and how to arrest an intoxicated suspect is discretionary even in light of policy governing arrests).

### Good Faith

In order to establish the "good faith" element of the officers' official immunity, TDCJ was required to prove that a reasonably prudent officer in the same or similar circumstances would have believed that the force used was necessary to subdue William Corey Watt and effectuate the "forced cell move." *Chambers,* 883 S.W.2d at 656–57; *Guevara,* 911 S.W.2d at 904.

■■ We again look to Townsend's affidavit to analyze whether TDCJ met its summary judgment burden of proving as a matter of law that the officers were acting in good faith. According to Townsend, after reviewing the report and accompanying videotape of the incident involving William Corey Watt, the officers "were acting as reasonably prudent correctional officers would have under the same or similar circumstances." Furthermore, he stated that the officers, in light of the perpetual resistance displayed by William Corey Watt, used the necessary force to control him.

Townsend's affidavit establishes that a reasonably prudent officer might have believed that the officers' actions were appropriate in restraining William Corey Watt. *Chambers,* 883 S.W.2d at 656–57; *Guevara,* 911 S.W.2d at 905. That burden having been met, the burden of proof then shifts to Watt to controvert TDCJ's proof of good faith. *Id.* To controvert TDCJ's summary judgment proof of good faith, Watt must do more than show that a reasonably prudent officer could have decided to take different action; she must produce evidence that *no* reasonable person in the officers' positions could have thought that the facts were such as to justify the officers' acts. *Chambers,* 883 S.W.2d at 657; *Guevara,* 911 S.W.2d at 905. If officers of reasonable competence could disagree on the actions which could have been taken in light of the circumstances, then immunity should be recognized. *Guevara,* 911 S.W.2d at 905 (citing *Gallia v. Schreiber,* 907 S.W.2d 864, 869 (Tex.App.—Houston [1st Dist.] 1995, no writ)).

Watt attached no evidence to her response to TDCJ's motion for summary judgment. As a consequence, we cannot say that TDCJ has failed to establish the "good faith" element of official immunity.

### CONCLUSION

Because we have found that the prison officers are protected from liability based on their official immunity, we hold that the trial court erred in denying TDCJ's motion for summary judgment for the reason that TDCJ is entitled to the benefit of its officers' immunity. We sustain TDCJ's point of error

and reverse and render summary judgment for TDCJ that Watt take nothing by this suit.